Brown Printing Company v. Commissioner.
Brown Printing Co. v. Commissioner
Docket No. 59516.
United States Tax Court
T.C. Memo 1957-37; 1957 Tax Ct. Memo LEXIS 215; 16 T.C.M. (CCH) 164; T.C.M. (RIA) 57037; February 28, 1957
William S. Duke, Esq., First National Bank Building, Montgomery, Ala., for the petitioner. Homer F. Benson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies of petitioner for the taxable years 1952 and 1953 in the amounts of $6,132.14 and $1,442.89, respectively. The sole issue is whether the amounts claimed as deductible rental expense for the use of the building occupied by petitioner in each of the taxable years is excessive for income tax purposes. Findings of Fact Petitioner is an Alabama corporation organized in 1894 for the purpose of engaging in the printing business. Its plant is located at 255 Dexter Avenue, Montgomery, Alabama. It filed its income tax returns for the years involved with the director *216 of internal revenue for the district of Alabama, at Birmingham, Alabama. James Hervey Crenshaw died in 1923. At his death he owned the capital stock of petitioner and the building it occupied. He was survived by his widow, Mollie Files Crenshaw, two sons, Hervey Files Crenshaw and Henry Childers Crenshaw, and one daughter, Mary Bell Crenshaw. Under the will of the decedent the life use of real and personal property in question was given to his widow with the remainder over to his heirs. The widow died on May 10, 1945, survived only by her daughter, the wife of Walter D. Shepard. The son, Henry Childers Crenshaw, was survived only by his widow, Annie D. Crenshaw. The other son, Hervey Files Crenshaw, was survived by his widow, Pauline S. Crenshaw, two sons, Files, Jr., and Jack, and a daughter, Hathaway Crenshaw Goldthwaite. Upon the death of decedent's widow, Mollie Files Crenshaw, a dispute arose as to whether the widow of the deceased child, Henry Childers Crenshaw, was an heir. There was also some question about the ownership of some of the stock. During the lifetime of Henry Childers Crenshaw, 249 shares of petitioner's capital stock were issued to him, and after his death *217 were registered on the corporate books in the name of his widow, Annie D. Crenshaw. A settlement was reached between the interested parties under which the widow, Annie D. Crenshaw, was given a child's share for life. Pursuant to the settlement, and under date of October 5, 1945, two revocable trust instruments were executed by Annie D. Crenshaw and the heirs of the decedent. Under one trust all the capital stock of petitioner was transferred to the trustees, and under the other trust the real estate occupied by petitioner was transferred to trustees. The trustees named in both instruments were the same and were designated as Annie D. Crenshaw, Pauline S. Crenshaw, and James C. Shepard, the son of Mary Bell Crenshaw. The trusts were to continue for the life of Annie D. Crenshaw and for a period of 10 years thereafter. Annie D. Crenshaw died in 1949. Under the instrument no trustee was to be elected to succeed her. Jack Crenshaw was elected in place of his mother, Pauline S. Crenshaw, and thereafter the two trusts were administered by Jack Crenshaw and James C. Shepard. During the life tenancy of Mollie F. Crenshaw, petitioner was paying an annual rental of $400 per month for *218 the premises located at 221-223 Dexter Avenue, Montgomery, Alabama. On May 15, 1946, the trustees of the trust holding the legal title to such property entered into a lease with the petitioner for a four-year term commencing on the first day of May 1945, and ending on the 30th day of April 1949. The lease provided for a rental based on 4 per cent of the petitioner's annual sales with a minimum rental of $400 per month. In addition, petitioner agreed to pay all taxes and insurance upon the property during the term of the lease. The lease was executed by the three trustees and Brown Printing Company by "Mrs. Henry C. Crenshaw," who is the same person as Annie D. Crenshaw, who executed the least as one of the trustees. On April 8, 1949, the then trustees, James C. Shepard, Jack Crenshaw, and James C. Shepard as president of petitioner, executed an extension of the lease for an additional 10-year period to end on April 30, 1959. Petitioner is the largest printing company in Montgomery, Alabama. The principal part of its business is printing and prior to 1945, petitioner depended primarily on state printing contracts which are let on bids. Petitioner also engaged in engraving, the sale *219 of office fixtures, furniture and supplies, wedding invitations, Christmas cards and related products. Because of competition petitioner's state business was declining. The building which petitioner occupies is located at 255 Dexter Avenue, a main business street in Montgomery, Alabama. The County Court House is 2 1/2 blocks to the southwest; the State Judicial Building is 1 1/2 blocks to the east; the State Office Building 2 or 3 blocks to the east; and the City Hall is 3 blocks to the northwest. The location is 4 blocks west of Court Square, which is generally regarded as the heart of the general business district. The building is of monumental design which was erected in about 1912 for the purpose of housing a printing business. It is of masonry construction. It consists of three floors and a basement 50 X 50. The ground floor is 50 X 120, and the second and third floors are 100 X 50. The total floor space is approximately 18,500 square feet. The floor space is relatively unobstructed with few partitions. All the floors are reinforced concrete. Its excellent construction permits the use of heavy machinery necessary to the printing business and is adaptable to businesses that *220 sell or distribute heavy or bulky products. The property leased covers a lot 40 X 50 to the rear of the building which is used for loading and unloading, and for employee and customer parking. Pursuant to its lease, petitioner paid to the trust the following amounts: Year
Amount
1948
$15,400
1949
17,400
1950
19,900
The amounts claimed by petitioner as rental deductions and the amounts disallowed by the respondent for the taxable years involved are as follows: Claimed by
Allowed by
Excess
Year
Petitioner
Respondent
Disallowed
1952
$22,401.62
$10,609.03
$11,792.59
1953
15,814.65
10,609.03
4,809.62
In the notice of deficiency, the respondent increased the income of petitioner by $11,792.50 for the year 1952, and by $4,809.62 for 1953, with the explanation that the excess amounts represent a distribution of earnings and profits and are not allowable as deductions under section 23(a) of the Internal Revenue Code of 1939. The original lease and the extension thereof executed by petitioner and the trustees of the trust were not arm's-length transactions. The alleged rental payment made in each of the taxable years in *221 excess of $12,325 is not a payment required to be made as a condition of the continued use or possession of the premises in question and does not constitute a deductible expense under section 23(a)(1)(A) of the 1939 Code. Opinion LeMIRE, Judge: The sole question is whether the total amount claimed as deductible rental expense for the use of the premises occupied by petitioner during each of the taxable years 1952 and 1953 is excessive for income tax purposes. Section 23(a)(1)(A) of the 1939 Code authorizes the deduction of "rentals or other payments required to be made as a condition to the continued use or possession, * * *, of property * * *." Whether amounts sought to be deducted as rentals constitute payments required to be made for the continued use of property, or are excessive presents a factual issue to be resolved in the light of all the particular facts. Limericks, Inc., 7 T.C. 1129, affd. 165 Fed. (2d) 483. The respondent contends that the lease and the extension thereof here in question were not arm's-length transactions, and hence, we are to determine what the lessee would have been required to pay as a condition to the continued use *222 of the property had it dealt at arm's length with a stranger. Roland P. Place, 17 T.C. 199, affd. per curiam 199 Fed. (2d) 373, certiorari denied 344 U.S. 927. The record establishes that after the death of the life tenant of the estate of James Hervey Crenshaw, a controversy arose as to whether Annie D. Crenshaw, the widow of a deceased child of the decedent, was entitled to share in the remainder estate. The controversy was settled by agreement with the interested parties under which Annie was to receive a child's share during her life. Pursuant to the settlement, two simultaneous trusts were created. By one trust instrument the interested parties conveyed to the trustees the premises then occupied by petitioner. By the other trust instrument the same parties transferred all of the shares of the capital stock of petitioner to the trustees. The designated trustees were the same for both trusts, and each trustee was a beneficiary of the respective trusts. During the settlement period negotiations were also in progress for the execution of a lease of the premises in question upon a more equitable basis of rental. On October 5, 1946, effective *223 as of May 1, 1945, the trustees of the building trust entered into a written lease with petitioner. Annie D. Crenshaw executed the lease both as trustee and as president of petitioner. The lease was for a term of four years, with a rental of 4 per cent of gross sales and a minimum of $4,800 per annum, in lieu of the $400 per month rental the petitioner had been paying. After the death of Annie D. Crenshaw and prior to the termination of the original lease of October 1946, the then trustees of the building trust and the petitioner executed an extension of the lease for a period of 10 years. One of the trustees, who was then president of petitioner, executed the extension agreement as trustee and as president. The creation of the two trusts and the execution of the lease were integral steps in the settlement of the controversy between the interested parties. We think it is clear that the best interest of petitioner was not the primary motive for executing the lease. In view of the close relationship of all the parties, the absence of any independent trustee, and the dual capacities of the parties executing the agreement, we are persuaded that the leasing arrangements were not the *224 result of arm's-length transactions, and have so found as a fact. Both petitioner and the respondent offered testimony of real estate appraisers well qualified to express an opinion as to the fair rental value of the premises in question. Their opinions vary to a considerable extent. On the basis of the entire record, and after giving due consideration to the testimony of the experts, we have found as a fact that the amount in excess of $12,325 which petitioner paid in each of the taxable years involved does not constitute rental expense deductible under section 23(a)(1)(A) of the Internal Revenue Code of 1939. Decision will be entered under Rule 50.